## 20255

Emory D. HARPER and Addie Mae Ivie, Executors of the Estate of Charles M. Middlebrooks, Appellants, v. The SOUTH CAROLINA TAX COMMISSION, Respondent.

(226 S. E. (2d) 699)

*Messrs. Allen E. Fulmer* and *A. L. Moses,* of Columbia, *for Appellants,*

*Messrs. Daniel R. McLeod, Atty. Gen., G. Lewis Argoe, Jr., Asst. Atty. Gen.,* and *John C. von Lehe, Asst. Atty. Gen.,* of Columbia, *for Respondent,*

July 13, 1976.

*Per Curiam:*

This is an appeal from an order of the lower court upholding the assessment of an estate tax deficiency against the estate of Charles M. Middlebrooks, deceased. The order under appeal correctly disposes of the issues and the following portions thereof will be reported as the judgment of the Court:

"This action involves a suit brought under Section 65-525 of the South Carolina Code for the redetermination of an estate tax deficiency proposed by the South Carolina Tax Commission. The matter was initially referred to the Master In Equity for Richland County who took testimony and reported his findings of fact and conclusions of law. 'The Master's . . . ultimate conclusion was that the estate tax deficiency determined by the Tax Commission was proper. The plaintiffs have taken numerous exceptions to this report. . . .

"The question to be resolved is whether the assets comprising the corpus of a trust were properly included in the gross estate of Charles M. Middlebrooks, the husband of the settlor, Lelia B. Middlebrooks. I have concluded, as the Master did, that these assets were properly included and that the estate tax deficiency must be upheld.

"South Carolina has adopted the substantive Federal estate tax law by reference. See Section 65-453 of the Code. The assets in question were included in Mr. Middlebrooks' estate because of a power to consume which he possessed at his death. Section 2041 of the Internal Revenue Code provides that such a power to consume will cause the assets to be included unless the power is 'limited by an ascertainable standard relating to health, education, support or maintenance of the decedent'. Unless the power to consume is so limited, it is by definition a general power of appointment and is includable in the gross

estate. The power in question was created by a trust. Mrs. Middlebrooks executed a deed of trust by which she purported to convey numerous rental properties. Mrs. Middlebrooks and her husband were cobeneficiaries during their lives and he was the sole trustee. The trust was to terminate at their death and she predeceased her husband.

"The relationship of South Carolina property law ██ to the tax question involved was articulately expressed in the Fifth Circuit case of *Lehman v. United States,* 448 F. (2d) 1318 (1971), as follows:

'The nature and extent of (the decedent's) authority under the Will is, of course, initially to be determined by reference to the applicable State law, in this case the Texas law of wills. However, if the practical exercise of her powers of disposition and control for her own benefit was not confined within limitations at least as stringent as those prescribed by Federal law, she enjoyed a general power of appointment for Federal estate tax purposes regardless of the label attached to her interest by State courts.'

It is clearly not necessary, therefore, to define a decedent's power, if that power exceeds maintenance and support. The proper concern is not with the definition under South Carolina law of a general power of appointment, but is rather with whether under South Carolina law, Mr. Middlebrooks possessed a right to invade the corpus of the aforementioned trust beyond the standard of support and maintenance fixed by the taxing statute. The central dispositive provision is found in paragraph 3 of the trust. It reads:

'3. My said trustee shall have the right to invade the corpus of this trust in any manner in which he deems necessary and to utilize such amounts as he shall, in his sole discretion deem necessary, for our maintenance and support or for any other expenses.'

It is the meaning of this provision which necessarily is determinative of the question to be resolved. This language

is, in my opinion, ambiguous, especially when read in light of other provisions of the trust. Paragraph 2 of the trust specifically limits the rental proceeds to support and maintenance. That provision is as follows:

'2. My said trustee shall, from the rental proceeds from this property, together with any other proceeds therefrom or from other investments, make such distribution as he shall deem necessary for our support and maintenance, and such distribution shall be made at such times and to such persons as my said trustee, in his discretion, shall deem advisable.'

"The South Carolina Supreme Court has clearly stated in the case of *Shelley v. Shelley*, 244 S. C. 598, 137 S. E. (2d) 851, that an instrument must be so construed as to carry out the intention of the maker as gathered from all attendant circumstances and that the facts surrounding the making of an instrument, when that instrument is ambiguous, must be given weight. A brief statement of the facts is therefore necessary.

"Mrs. Middlebrooks executed the trust when she was eighty-five (85) years old. She purported to place in the trust all of her rental properties totaling about 90% of what she owned. The trust stated that it was for the benefit of her and her husband for their lives. At termination, the assets were to go to collateral relatives, the couple having had no children. Mr. Middlebrooks was also eighty-five (85) years of age when the trust was executed. His wife acknowledged in the instrument that the trust assets 'were accumulated largely through the efforts * * * of my beloved husband'. Mr. Middlebrooks was made sole trustee and given broad powers. The trust was not recorded when executed and was treated very loosely during Mrs. Middlebrooks' lifetime. She made four transfers of the trust assets in her own name after they had purportedly been placed in the trust. (See paragraph 6 of the Stipulation of Fact for a detailed description.) Mr. Middlebrooks,

the trustee, apparently condoned these transfers. Some two years after its execution, the trust was finally recorded. These actions on the part of the settlor lend insight as to her intention and they indicate that she did not intend to bind herself to the standard of support and maintenance. If she did not intend to so limit herself, she certainly did not intend to limit her husband who was a co-beneficiary.

"The plaintiffs have relied on the doctrine of *ejusdem generis*. This doctrine, although a standard rule of construction, should not be used as a mere formalism when other indices of intent are present. In the case of *Rogers v. Rogers*, 221 S. C. 360, 70 S. E. (2d) 637, our Court held as follows:

'While there are certain rules of construction to be followed in seeking (the testator's) intention, they are subservient to the paramount consideration of determining what he meant by the terms used in his will.'

It is also noteworthy that the doctrine was flatly rejected by the Third Circuit Court of Appeals in the case of *Miller v. United States*, 387 F. (2d) 866 (1968). In *Miller*, the Court said of the doctrine that it 'has very limited application and is to be exercised with caution'. The Federal courts generally hold that the standard of maintenance and support must be strictly adhered to and anything beyond that standard will be too broad. See in addition to *Miller*, the cases of *Strite v. McGinnes*, 330 F. (2d) 234 (1964), cert. denied 379 U. S. 910 [85 S. Ct. 69, 13 L. Ed. (2d) 43]; *Lehman v. United States, supra; Peoples Transit Company v. United States*, 412 F. (2d) 1156 (1969); *R. E. Stafford, Exr. v. United States*, 236 F. Supp. 132 (1964). . . .

"Mr. Middlebrooks was without question the first object of his wife's affections and bounty. The couple had no children and the gift over at termination of the trust was to collateral relatives. Much weight has been given to this fact in determining the extent of a power possessed by a

beneficiary. See *Strite v. McGinnes, supra.* The importance of this fact has been forcefully recognized in the decisions of this State. In *Moody v. Tedder,* 16 S. C. 557, our Court held as follows:

'It is clear the testator did not intend to make his wife accountable to her niece either for extravagance in the manner of her living, or for want of business habits and economy, or generally for the manner in which she used the property while in her possession. His wife was the first object of his affections, and she was to be made comfortable out of his property if nothing remained of it at her death.'

"The Master found that the settlor, Mrs. Middlebrooks, intended to grant a power to consume to herself and to her trustee-husband which was broader than the standard of support and maintenance. I concur in his finding. Among the facts which I find relevant in reaching this result are: (1) The striking contrast between paragraphs 2 and 3 of the trust instrument; (2) Mr. Middlebrooks was the clear and expressed object of his wife's bounty; (3) The advanced age of the couple when the trust was created and the value of the assets placed in the trust as compared to her total worth; (4) The actions of the settlor in apparently ignoring the existence of the trust after its execution.

"Finally, had Mrs. Middlebrooks intended to limit the power to consume to maintenance and support alone, it would have been a simple thing to have done so. I find nothing in either the trust instrument or the circumstances surrounding the creation of the trust which indicates such an intention.

"Having found that the power to consume possessed by Mr. Middlebrooks at the time of his death was not limited to the standard of support and maintenance, it necessarily follows that he possessed under Section 2041 of the Internal Revenue Code a general power

of appointment which was properly included in his gross estate for South Carolina Estate Tax purposes. It is, therefore, ordered that the petition for redetermination of the estate tax deficiency be dismissed and this action ended."