**Jackie KLEINER**

v.

**The FIRST NATIONAL BANK OF ATLANTA.**

**George MOROSANI**

v.

**The FIRST NATIONAL BANK OF ATLANTA.**

**Civ. Nos. C80–921, C81–1553.**

United States District Court, N.D. Georgia, Atlanta Division.

April 15, 1983.

Robert B. Remar, Jonathan A. Zimring, Remar, Arnold & Zimring, Jerome J. Froelich, Jr., Kenneth P. McDuffie, Atlanta, Ga., for Kleiner and Morosani.

Michael P. Malakoff, Pittsburgh, Pa., for Morosani.

Richard M. Kirby, Hansell, Post, Brandon & Dorsey, Richard M. Langway, Marilyn D. Britwar, Atlanta, Ga., for First Nat. Bank of Atlanta.

## ORDER

ORINDA D. EVANS, District Judge.

These cases are before the Court on Plaintiffs' Motions for Class Certification. For the reasons hereinafter set forth, the motions are GRANTED.

### I. *Preliminary Statement*

These cases allege causes under federal law and for breach of contract under state law concerning the amount of interest paid in certain loan transactions. Plaintiffs Kleiner and Morosani executed various notes calling for interest to be paid at a specified percentage above the "prime rate," which allegedly was defined in the notes as the rate charged to the Bank's best and most creditworthy commercial borrowers. The notes allegedly also called for the interest to be calculated on either a "per annum" or 360-day year simple interest basis.

The central allegation in both lawsuits is that Plaintiffs were charged interest at a rate greater than the rate called for in their loan agreements. Plaintiffs contend that their interest payments were tied to the Bank's "published" prime rate, but that the Bank's best and most creditworthy borrowers actually were charged less than the published prime rate. They claim that the notes, which contained both the phrases "prime rate" and "rate charged to the Bank's best and most creditworthy commercial borrowers," called for interest based on the lowest rates *actually* charged to the Bank's best customers, and not based on a "published" prime rate which Plaintiffs claim was arbitrarily set higher than the lowest rates actually charged. Finally, Plaintiffs allege that interest was calculated on a basis different from a "per annum" basis or a 360-day year simple interest basis, i.e., a basis which yielded a greater return to the Bank than called for by the notes. *See Morosani v. First National Bank of Atlanta,* 539 F.Supp. 1171 (N.D.Ga.1982); *Kleiner v. First National Bank of Atlanta,* 526 F.Supp. 1019 (N.D.Ga.1981).

Motions for class certification in both cases were timely filed pursuant to Local Rule 221.13. The cases were consolidated at Plaintiffs' request for discovery purposes only on June 1, 1982. Following protracted discovery on class issues, the Court directed the parties to submit briefs on the certification issue. *See* Orders of October 29, 1982 and December 26, 1982. Although the cases have not been consolidated for purposes of class certification, both motions will be addressed in this single order due to the similarity of factual and legal issues involved. For the reasons that follow, Plaintiffs' motions to certify classes are granted in both cases. And because the cases present common issues of law and fact, the cases will be consolidated for purposes of notifying class members and for trial on the merits. Fed. R.Civ.P. 42.

### II. *Statement of Facts and History of the Litigation*

#### A. *Kleiner v. First National Bank of Atlanta, No. C80–921A*

Kleiner obtained three loans of $100,000 each on October 6, 1978, March 1, 1979 and

August 28, 1979 for terms of 132 days, 180 days and 181 days respectively. Each of the loans has been repaid in full. Under the terms of the loans, Kleiner was to be charged interest at a specified percentage above the rate "charged by [the] bank from time to time to its best commercial borrowers with respect to ninety (90) day borrowings. (the "Prime Rate")." The interest was to be charged on a "per annum" basis. All of the loan agreements were executed on identical printed forms.

Kleiner obtained a fourth loan of $115,000 for the purpose of acquiring real property by executing a real estate note on December 31, 1979.

Under the terms of the fourth loan, interest was to be charged at a rate of 1% above the "prime rate" currently charged from time to time by [the bank] to its best and most credit worthy commercial customers.... If at any time or from time to time such prime rate increases or decreases, then the rate of interest hereunder shall be correspondingly increased or decreased effective on the day on which any such increase or decrease of such prime rate is publicly announced. In the event that [the bank], during the term hereof, shall abolish or abandon the practice of publishing the prime interest rate, or should the same become unascertainable, Holder shall designate a comparable reference rate which shall be deemed to be the "prime rate" hereunder.

Interest on Kleiner's fourth loan was to be charged "on a 360-day year simple interest basis."

Kleiner rescinded the real estate note on November 3, 1980.[1] He returned the entire principal and the Bank returned all interest and other charges paid on the loan and released its security interest. See Appendices H–K to Defendant's Memorandum in Opposition to Plaintiff's Motion.

Kleiner commenced this action on May 29, 1980 by filing an eight-count complaint alleging violations of the Truth-in-Lending Act, 15 U.S.C. § 1601 et seq. (TILA), the National Bank Act, 12 U.S.C. §§ 85–86, and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. as well as pendent state law claims for fraud. The Court granted Kleiner leave to amend on November 19, 1981, but denied his attempt to add claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. (RICO).[2] Kleiner v. First National Bank of Atlanta, 526 F.Supp. 1019 (N.D.Ga.1982). The amended complaint re-alleged the TILA and National Bank Act claims, and recast the pendent state fraud claims as breach of contract claims. On June 1, 1982, the Court dismissed identical National Bank Act claims for failure to state a cause of action in the related case of Morosani v. First National Bank of Atlanta, 539 F.Supp. 1171 (N.D.Ga.1982). The Bank has now moved to dismiss the same claims in Kleiner, and Plaintiff concedes that the Court's decision in Morosani is dispositive of its National Bank Act claims. Kleiner's National Bank Act claims are hereby dismissed. Thus, after a tortuous two and a half-year history, Kleiner's case consists of a single TILA claim and state law claims for breach of contract.

Kleiner's Truth-in-Lending claim is that the Bank failed adequately to disclose the rate of interest and annual finance charge on the real estate note as required by the Act, 15 U.S.C. § 1639, and by Regulation Z, § 226.8, C.F.R. § 226.8.[3] The truth-in-lend-

---

**1.** The rescission was pursuant to the applicable provisions and regulations under the Truth-in-Lending Act, 15 U.S.C. § 1635, 12 C.F.R. § 226.9 (1982).

**2.** The Court found that Kleiner failed to state a civil cause of action under RICO. The Court incorporated its reasoning in Kleiner to the related case of Morosani v. First National Bank of Atlanta, No. C81–1553A, and certified the question to the Court of Appeals for the Elev-

enth Circuit pursuant to 28 U.S.C. § 1292(b). The appeal is pending.

**3.** Kleiner's $115,000 real estate note was subject to the disclosure provisions of the Truth-in-Lending Act only because it was secured by an interest in his personal residence. Ordinarily, loan transactions over $25,000 are exempted from TILA, unless they are secured by an interest in "real property, or in personal property used or expected to be used as the principal

ing statement supplied in connection with the note disclosed the interest rate and finance charge as "prime + 1% per annum." Kleiner contends that, because "prime" was not tied to the rate actually charged the Bank's best customers, but was rather a "subjective" rate depending on what the Bank announced for a given day, the Bank failed adequately to disclose the annual percentage rate or the method by which such rate was determined.

Kleiner's breach of contract claim, based on the three form loan agreements and the real estate note, is, as stated, that he paid a greater amount of interest than the loan agreements called for and that the interest was charged on a 365/360 day method instead of on a per annum or 360-day year simple interest basis.

Kleiner seeks an order under either Fed. R.Civ.P. 23(b)(2) or 23(b)(3) certifying a class on the breach of contract claim defined as follows:

All persons who borrowed money from the Defendant and who have paid interest based upon a rate charged to the Defendant's "best commercial borrowers" or "best and most credit worthy commercial customers" on or after May 28, 1978 (two years prior to the commencement of this action) to the present; and/or

All persons who borrowed money from the Defendant and were to have paid interest "per annum" or on a "360 day year simple interest basis" and paid interest at a higher rate at any time from May 28, 1978 to the present.[4]

Kleiner also moves for certification of a subclass on the TILA claim defined as follows:

All persons who obtained a loan from the Defendant where Defendant had contractually agreed that the interest rate could be based on a "prime" interest rate, and who were provided Truth-in-Lending Disclosure Statements on or after May 28,

1979 (one year prior to the commencement of this action).

### B. *Morosani v. First National Bank of Atlanta, No. C81–1553A*

Morosani obtained a loan of $1.6 million from the Bank on a real estate note executed December 26, 1979. The loan was fully repaid on August 26, 1980. The terms of the note were identical to the real estate note executed by Kleiner in connection with his fourth loan. Morosani was to be charged interest at a rate of 2.5 percent

per annum plus the "prime rate" currently charged from time to time by [the bank] to its best and most creditworthy commercial customers.... If at any time or from time to time such prime rate increases or decreases, then the rate of interest hereunder shall be correspondingly increased or decreased effective on the day on which any such increase or decrease of such prime rate is publicly announced. In the event that [the bank], during the term hereof, shall abolish or abandon the practice of publishing the prime interest rate, or should the same become unascertainable, Holder shall designate a comparable reference rate which shall be deemed to be the "prime rate" hereunder. Interest shall be computed on a 360-day year simple interest basis.

Morosani's note provided that the parties' agreement would be governed by North Carolina law. Morosani is a citizen of North Carolina.

Morosani filed a six-count complaint on August 18, 1981, alleging RICO and National Bank Act claims and breach of contract claims identical to those in Kleiner. The Court dismissed the RICO claims by incorporating its prior Order in *Kleiner v. First National Bank of Atlanta*, 526 F.Supp. 1019. As stated, Morosani's National Bank Act claims subsequently were dismissed in June 1982. 539 F.Supp. 1171. His case has thus

---

dwelling place of the consumer...." 15 U.S.C. § 1603(3).

**4.** Counsel for Plaintiffs stated in an affidavit that the Bank changed the wording in its form promissory note after June 1, 1981, and that

borrowers who signed such notes after that date are not members of the putative class. Affidavit of Michael Malakoff in Support of Plaintiff's Motion for Class Certification.

boiled down to his breach of contract claim, and he now moves to certify a class identical to the class requested in Kleiner.

### III. Discussion

#### A. Jurisdiction

■ At the outset, the Court notes, *sua sponte*, that there is a question whether it should exercise its discretion to decide the pendent state law claims for breach of contract.[5] The state claims were brought pendent to federal claims which are no longer present in these cases.

The wellspring for the doctrine of pendent jurisdiction is *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In *Gibbs*, the Supreme Court held that federal courts have the power to hear state law claims which "derive from a common nucleus of operative fact" with a substantial federal claim. 383 U.S. at 725, 86 S.Ct. at 1138. When a plaintiff's claims "are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues there is *power* in federal courts to hear the whole." *Id.*

After establishing the power of federal courts under Article III to hear state claims, the Court cautioned that the power should not be exercised as a matter of course, especially where the federal claims are dismissed before trial.

[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience, and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. *Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.*

383 U.S. at 726, 86 S.Ct. at 1139. (emphasis added) (citations omitted).

The Court clearly has power to decide the breach of contract claims because they arose out of the same nucleus of operative facts that gave rise to the federal claims. Those federal claims having been dismissed long before trial, however, *Gibbs* suggests that the state claims should no longer be entertained here.[6]

---

**5.** The complaint in *Morosani* states that the breach of contract claims in that case were brought under the Court's diversity jurisdiction. 28 U.S.C. § 1332. Where a class action seeks to proceed on grounds of diversity, each class member must satisfy the $10,000 amount in controversy requirements. *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). In response to an argument by the Bank that each class member could not satisfy the requirement, Plaintiff has abandoned diversity jurisdiction and argues that the Morosani class is properly before this Court based on pendent jurisdiction. There is therefore no independent basis for jurisdiction in either *Kleiner* or *Morosani*, and the Court must decide whether the cases are appropriate for treatment as pendent claims.

**6.** The continued presence in *Kleiner* of a federal Truth-in-Lending claim does not give the Court pendent jurisdiction over the state law claims. The state claims do not derive from the same "nucleus of operative facts" as the TILA claim; they are therefore not pendent to *that* federal claim, and its presence in the case does not

give the Court *power* to hear the state claims. Kleiner's breach of contract allegations are based on the three form promissory notes executed between October 1978 and August 1979. The TILA claim arises from a separate real estate note in December 1979; Kleiner has no breach of contract claim on this note because he made an election of remedies and rescinded the agreement rather than affirm it and sue for damages. *Martin v. Rollins*, 238 Ga. 119, 231 S.E.2d 751 (1977); *see S. Williston*, 12 Williston on Contracts §§ 1454 *et seq.* (3d ed. 1970); *A. Corbin*, 5A Corbin on Contracts § 1131 (1964). As such, the breach of contract claims are not sufficiently related to the TILA claim for the purposes of pendent jurisdiction. *Price v. Franklin Ins. Co., Inc.*, 574 F.2d 594 (D.C.Cir. 1978).

Even if the state claims could be said to be pendent for the purpose of giving the Court *power* to hear them, federal policy suggests that federal courts should be reluctant to exercise their discretion to decide state claims pendent to TILA actions. Federal truth in lending legislation was not intended to subject the law

Since *Gibbs,* the overwhelming majority of courts have applied the rule that if federal claims are dismissed before trial, the pendent state claims should be dismissed as well. *See, e.g., Ray v. Tennessee Valley Authority,* 677 F.2d 818, 825 (11th Cir.1982); *Baurer v. Planning Group, Inc.,* 669 F.2d 770 (D.C.Cir.1981); *Ellingson v. Burlington Northern, Inc.,* 653 F.2d 1327, 1331 (9th Cir.1981); *Tinker v. DeMaria Porsche-Audi, Inc.,* 632 F.2d 520, 523 (5th Cir.1980); *United States ex rel. Glynn v. Capeletti Brothers, Inc.,* 621 F.2d 1309, 1317–18 (5th Cir. 1980); *Briggs v. American Air Filter Co.,* 455 F.Supp. 179 (N.D.Ga.1978), *aff'd.,* 630 F.2d 414 (5th Cir.1980). Wright and Miller, 13 Federal Practice and Procedure § 3567 text accompanying note 34 and cases cited therein. *But see Cocklereece v. Moran,* 532 F.Supp. 519, 530 (N.D.Ga.1982) (Freeman, J.). *Gibbs* does not *require* that pendent state claims be dismissed, however, especially if the discretionary factors which the Supreme Court set forth suggest a contrary result.

As *Gibbs* made clear, the dual concerns for comity and consistent interpretation of state law apply in any discretionary exercise of pendent jurisdiction, but they are especially implicated in cases involving novel or difficult issues of state law. Federal courts are particularly reluctant to decide such claims after the federal issues are dismissed before trial. *Briggs v. American Air Filter, Inc.,* 455 F.Supp. 179, 182 (N.D.

Ga.1978) (O'Kelley, J.), *aff'd.,* 630 F.2d 414 (5th Cir.1980). This would appear to be such a case, involving an unusual and difficult issue of contract interpretation of potential importance to the banking community and its customers.

In applying the other *Gibbs* factors—judicial economy, convenience and fairness to litigants—in a case where the federal claims have been dismissed, courts focus on essentially two questions: 1) whether there has been a substantial commitment of judicial resources to the state claims such that their dismissal would be wasteful, *see Rosado v. Wyman,* 397 U.S. 397, 403, 90 S.Ct. 1207, 1213, 25 L.Ed.2d 442 (1970); and 2) whether, due to the statute of limitation or some other reason, the plaintiff would be barred from bringing his claims in state court. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982); *O'Brien v. Continental Illinois National Bank & Trust,* 593 F.2d 54, 65 (7th Cir.1979).

In determining whether substantial judicial resources have been committed to state claims such that federal jurisdiction should be retained after dismissal of the federal cause of action, the mere length of time that a case has been pending in federal court is not necessarily determinative. *See O'Brien v. Continental Illinois National Bank & Trust,* 443 F.Supp. 1131 (N.D.Ill. 1977), *reversed in part on other grounds,* 593 F.2d 54 (7th Cir.1979).[7]

of lender-borrower relations to wholesale federal court scrutiny. *McKimmie v. Avco Financial Services, Etc.,* 504 F.Supp. 1286 (N.D.N.Y. 1981). And "routine exercise of jurisdiction over state claims pendent to claims under the Act would constitute an undue burden on federal courts." *Id.* 1290; *Copley v. Rona Enterprises, Inc.,* 423 F.Supp. 979, 984–85 (S.D.Ohio 1976); *Soleno v. Aldens,* 395 F.Supp. 861, 863 (D.Conn.1975). Finally, in the context of state class action claims, exercise of pendent jurisdiction over such claims would undermine Congressional intent to limit significantly class recovery in a TILA action. 15 U.S.C. § 1640(a)(2)(B) (1982) (limits class recovery to the lesser of $500,000 or 1 per cent of the creditor's net worth, no matter what the size of the class or amount of actual damages); *see Brame v. Ray Bills Finance Corp.* 85 F.R.D. 568, 595–96 & n. 35 (N.D.N.Y.1979) (Congress'

intent to limit class recovery under TILA operates as implicit limitation on power of federal courts to entertain pendent claims under the Act); *Perry v. Beneficial Finance Co. of New York, Inc.,* 81 F.R.D. 490 (W.D.N.Y.1979); *see also Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 372, 98 S.Ct. 2396, 2401, 57 L.Ed.2d 274 (1978); *Aldinger v. Howard,* 427 U.S. 1, 14, 18, 96 S.Ct. 2413, 2420, 2422, 49 L.Ed.2d 276 (1976).

If there is pendent jurisdiction to hear the breach of contract claims, it derives only from the federal claims which already have been dismissed.

7. In *O'Brien v. Continental Illinois National Bank & Trust,* 443 F.Supp. 1131 (N.D.Ill.1977), *reversed in part,* 593 F.2d 54 (7th Cir.1979), federal securities claims were dismissed after the case had been pending for five years. After noting that the case had been on the docket for

However, the second factor—whether the statute of limitations or some other reason would bar an action in state court—suggests that the Court should decide this case on its merits in this forum.

The Georgia statute of limitations for breach of a contract not under seal is six years. Official Code of Ga.Ann. § 9–3–24 (1982). Thus, the statute as applied to transactions governed by Georgia law would not run until late in 1985, and a state court action on those claims presumably could be brought. Morosani's loan, however, is governed by North Carolina law, and North Carolina's statute of limitations on contract claims is only three years. N.C. Gen.Stat. § 1–52 (1969). Morosani thus would be without a remedy if he is dismissed from this forum. Moreover, it appears that the laws of several other states with varying statutes of limitations may apply to the claims of putative class members.[8]

In deciding whether to exercise pendent jurisdiction where federal claims have been dismissed before trial, the Eleventh and Fifth Circuits have held, " 'That a plaintiff's state law claims will be time-barred if dismissed is certainly a factor, if not a determinative factor, a district court should consider in deciding whether to maintain jurisdiction over pendent state claims. . . .' " *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982); *Henson v. Columbus Bank and Trust Co.,* 651 F.2d 320, 325 (5th Cir.1981) (quoting *Pharo v. Smith,* 625 F.2d 1226, 1227 (5th Cir.1980)). The Court finds it determinative here. *See O'Brien v. Continental Illinois National Bank & Trust,* 593 F.2d 54 (7th Cir.1979) and note 6 *supra.*

There is an additional reason for maintaining jurisdiction of the pendent claims. Morosani and a putative class presumably could invoke this Court's diversity jurisdiction, notwithstanding their decision not to invoke it in this action,[9] in which case the Court would be required to decide the state law claim on the merits. Because Kleiner and Morosani seek certification of identical classes, it would make no sense, on either comity or judicial economy grounds, to dismiss the claims of some putative class members when the Court would reach the merits of the state law issues in any event. The Court therefore concludes that it would be appropriate to exercise pendent jurisdiction in these cases.[10]

---

a relatively long time, the district court nonetheless dismissed pendent state claims of fraud.

The court held that "although these cases have been pending for some time, little by way of discovery has been accomplished and the cases are still at preliminary stages." 443 F.Supp. at 1137. Moreover, the court noted that any discovery already accomplished could be used in a state court proceeding. Finally, the court found that the case presented novel and important issues of state banking law, and that plaintiffs would not be barred from pursuing the claim in state court.

The court of appeals reversed only after it was later determined that plaintiff's claims were in fact time-barred in state court. The court said nothing to disturb the district court's view that, as long as a plaintiff is not barred from proceeding in state court, the length of time a case has occupied on the federal docket is not determinative of the decision to dismiss, especially if the case is still in a preliminary stage.

8. The Bank contends that the laws of Tennessee, Virginia and South Carolina govern the laws of some putative class members in *Morosani.* Exhibit B to Appendix V in Support of Defendant's Memorandum in Opposition to Class Certification.

9. *See* note 4 *supra.*

10. Some cases suggest that it is an abuse of discretion for a district court to rely on pendent jurisdiction to entertain a class action for money damages under Fed.R.Civ.P. 23(b)(3). In *Almenares v. Wyman,* 453 F.2d 1075 (2d Cir. 1971), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972), Judge Friendly stated:

With respect to a class action under F.R. Civ.P. 23(b)(3), where damages or some other relief requiring examination of collateral facts is required, it could well be an abuse of a trial court's discretion to utilize the principle of pendent jurisdiction to include class claims not otherwise assertable in federal court, even though they arise from the same nucleus of operative facts as the primary claim. This would certainly be true where each class member's claim is small, and the factual issues surrounding it are complex.

453 F.2d at 1085–86.

In *Almenares,* Judge Friendly was writing in the context of a pendent claim asserted by

## B. Certification of the Breach of Contract Claims

An action may be certified as a class action if "1) the class is so numerous that joinder of all members is impracticable, 2) there are questions of law or fact common to the class, 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and 4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). A class action is appropriate under subdivision (b)(2) of Rule 23 when the prerequisites of subdivision (a) are satisfied and "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole...." Fed.R. Civ.P. 23(b)(2). Subpart (b)(3) governs class actions when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy...." Fed.R.Civ.P. 23(b)(3). The plaintiff bears the burden of proof with respect to each component of Rule 23. Zeidman v. J. Ray McDermott & Co., Inc., 651 F.2d 1030 (5th Cir.1981).

Subpart (b)(2) of Rule 23 is applicable to actions, such as civil rights suits, in which final injunctive or declaratory relief can settle the legality of a party's behavior with respect to the class as a whole. It is not applicable to cases in which the appropriate relief "relates exclusively or predominantly to money damages." Fed.R.Civ.P. 23 supplementary note of advisory committee; Bogard v. Cook, 586 F.2d 399, 409 (5th Cir.1978), cert. denied, 444 U.S. 883, 100

S.Ct. 173, 62 L.Ed.2d 113 (1979); Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1314 (9th Cir.1977); Waldrip v. Motorola, Inc., 85 F.R.D. 349, 353 (N.D.Ga.1980). Plaintiffs concede that this action is predominantly for monetary damages, despite the possibility that some injunctive relief may be appropriate. Rule 23(b)(2) therefore is not applicable, and Plaintiff's motion will be considered under Rule 23(b)(3).

### 1. Numerosity

The Court is satisfied that the putative class is sufficiently numerous. Kleiner and Morosani have offered evidence showing that there are more than 2,000 borrowers who took loans under either the form promissory note or the real estate note described earlier. A plaintiff need not specify an exact number of class members, but must show only that joinder is impracticable through "some evidence or reasonable estimate of the number of purported class members." Zeidman, 651 F.2d at 1038; 3B Moore's Federal Practice § 23.05[3].

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Rule 23(b)(3) imposes the additional requirement "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members...." The commonality requirement is satisfied "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." Paxton v. Union National Bank, 688 F.2d 552, 561 (8th Cir.1982) (quoting American Finance System, Inc. v. Harlow, 65 F.R.D. 94,

---

class members who themselves were unable to allege a federal claim sufficient to invoke the court's jurisdiction. The Court faced a decision whether to take jurisdiction over a class of litigants whose only claim was pendent to the federal claim of a different class of litigants, and who therefore could not have come into federal court on their own in the first instance. The Court stated that, under that circumstance, pendent jurisdiction should be exercised only to

consider a class application for declaratory or injunctive relief under 23(b)(2).

In this case, on the other hand, each class member validly asserted his or her own federal claim, and individually could have brought a state claim for damages pendent thereto in this Court. That being the case, it would not be an abuse for the Court to confront those claims on a class basis, and Almenares does not apply.

107 (D.Md.1974)), *petition for cert. filed,* 51 U.S.L.W. 3563 (U.S. Jan. 20, 1983) (No. 82–1220). The existence of individual questions concerning class members does not necessarily defeat the commonality requirement. *Id.;* the Rule requires only that common questions predominate, not that they be unanimous. *Sharp v. Coopers & Lybrand,* 70 F.R.D. 544, 547 (E.D.Pa.1976).

When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such. *E.g., Broad v. Rockwell Intern. Corp.,* 642 F.2d 929 (5th Cir.) (en banc) *cert. denied,* 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981) (breach of indenture agreement); *Irving Trust Co. v. Nationwide Leisure Corp.,* 95 F.R.D. 51 (S.D.N.Y.1982) (breach of contract for failure to provide charter tour services); *Jennings Oil Co., Inc. v. Mobil Oil Corp.,* 80 F.R.D. 124 (S.D.N.Y. 1978) (validity of general release provision of contract); *Davis Cattle Co. v. Great Western Sugar Co.,* 393 F.Supp. 1165 (D.Col.1975) (breach of contract); *Janicik v. Prudential Insurance Co. of America,* —— Pa.Super.Ct. ——, 451 A.2d 451 (1982) (interpretation of form insurance contract); *Derenco, Inc. v. Benj. Franklin Fed. Sav. & Loan Assn.,* 281 Or. 533, 577 P.2d 477 (1978) (form mortgage); *Buchanan v. Brentwood Federal Savings and Loan Assn.,* 457 Pa. 135, 320 A.2d 117 (1974) (form contract); *Perlman v. First National Bank of Chicago,* 15 Ill.App.3d 784, 305 N.E.2d 236 (1st Dist. 1973) (360-day year method of computing interest); *Georgia Investment Co. v. Norman,* 229 Ga. 160, 190 S.E.2d 48 (1972) (validity of loan note); *Silverstein v. Shadow Lawn Sav. & Loan Assn.,* 51 N.J. 30, 237 A.2d 474 (1968) (breach of contract based on method of calculating interest).

In this case, putative class members signed identical or similar form agreements, all of which present the question of the meaning of such terms as "prime rate," "best and most creditworthy commercial borrowers," "per annum," and "360-day year simple interest basis." The meaning of these terms is the predominant issue in the case and is an issue common to all class members. That individual questions may remain after interpretation of the contract—questions of damages or possible defenses to individual claims—would not defeat the commonality requirement. *See Brown v. Cameron-Brown Co.,* 92 F.R.D. 32, 38 (E.D.Va.1981); *Ingram v. Joe Conrad Chevrolet, Inc.,* 90 F.R.D. 129, 131 (E.D.Ky. 1981).

Against the weight of this authority, the Bank contends that this breach of contract action cannot be treated as a class action because each class member must prove his or her individual agreement with the Bank by reference to the parties' subjective states of mind and prior course of dealings, notwithstanding the existence of form contracts containing identical or nearly identical language across the entire class. This appears to be an argument that a breach of contract case could *never* be a class action because liability in every case would depend on the individual's understanding of the agreement he signed.

In support of this argument the Bank cites a recent district court decision refusing to certify a class in a case involving a "prime rate" breach of contract claim identical to Plaintiffs' claim here. *A.C. Distributing Co. v. First State Bank of Oregon,* 97 F.R.D. 440 (D.Ore.1983). In *A.C. Distributing* the Court found class certification inappropriate because it found that the contract claim would depend on each class member's understanding of the terms of his agreement. The Court stated:

Class certification is improper when knowledge of individual class members requires separate adjudications. The breach of contract claim would require an individual inquiry of each class member's understanding of the term "prime rate." If a class member had knowledge of the bank's definition of prime rate at the time he secured the loan, he would not be entitled to recover, because the definition of prime rate would be a term of the contract with regard to that individual.

at 447 (citations omitted).

Although *A.C. Distributing* and some other cases appear to support the Bank's posi-

tion, *see, e.g. Graybeal v. American Savings and Loan Assn.,* 59 F.R.D. 7, 15 (D.D.C. 1973) ("by their very nature, the claims for breach of contract . . . do not lend themselves to class action treatment."), the Court finds it clearly to be wrong. To accept the Bank's position "would be, in effect, an emasculation of the vitality and pliability" of Rule 23 in a wide variety of contexts. *Dolgow v. Anderson,* 43 F.R.D. 472, 490 (E.D.N.Y.1968). If breach of contract cases were meant to be excluded from the Rule's coverage, Congress would have so specified. *Cf. Derenco, Inc. v. Benj. Franklin Fed. Sav. & Loan Assn.,* 281 Or. 533, 577 P.2d 477, 499 (1978) (under state class action rule, Court rejected argument against certifying breach of contract claim absent showing that legislature intended to exclude such claims from rule).

 Moreover, to *presume,* as do the Bank and the Court in *A.C. Distributing,* that the meaning of a contract will always turn on the state of mind of the parties is inconsistent with fundamental principles of contract interpretation. Here the parties have entered standard written contracts containing terms that have an objective meaning. In interpreting contracts courts "must be concerned with the parties' actual intentions, but only to the extent that they evidenced what they intended by what they wrote." *Broad v. Rockwell Intern. Corp.,* 642 F.2d at 947. The Court's primary task is to construe the terms of the contract as written; parol evidence of the parties' sub-

jective intent, or of a prior course of dealings, would be inadmissible unless the contract were patently ambiguous. Official Code of Ga.Ann. § 13–2–2 (1982); *Weems v. Albert Pick & Co.,* 33 Ga.App. 579, 50, 127 S.E. 819 (1925). And it is axiomatic that a contract is not ambiguous merely because it may be difficult to construe. *Jack V. Heard Contractors, Inc. v. A.L. Adams Construction Co.,* 155 Ga.App. 409, 412, 271 S.E.2d 222, 225 (1980).

Neither side has asserted that the interest rate provisions of the notes are ambiguous. The Court will not so find *sua sponte,* and thus will not presume on the record before it that resolution of this contract dispute will require a particularized inquiry into the extrinsic circumstances of each individual's bargain with the Bank.[11]

The Bank argues that it may be necessary to construe the technical terms contained in the contract by reference to parol evidence of their understood usage in the banking industry. Georgia law governing interpretation of contracts provides that "technical words, words of art, or words used in a particular trade or business will be construed, generally, to be used in reference to this peculiar meaning." Official Code of Ga.Ann. § 13–2–2(2) (1982). The Bank may be correct in this assertion. However, the present state of the record does not permit this determination to be made. Under Georgia law "[t]he custom of any business or trade shall be binding only

11. This is not to say that breach of form contract suits are susceptible to class treatment in all cases. There will be some cases where the record at the certification stage demonstrates a likelihood that most putative class members will not fall within the class sought to be certified. *Feinstein v. Firestone Tire & Rubber Co.,* 535 F.Supp. 595 (S.D.N.Y.1982) (substantial question whether defect in allegedly defective tires had manifested itself in each individual case), or where the contract can *only* be interpreted on a case-by-case basis, *Wilensky v. Olympic Airways,* 73 F.R.D. 473 (E.D.Pa.1977) (question whether airline used its "best efforts" to make alternate plans for passengers bumped from flights). *See also Coca-Cola Bottling Co., Inc. v. The Coca-Cola Co.,* 95 F.R.D. 168 (D.Del. 1982) (complexity and history of dispute, including existence of implied and unwritten

agreements, made it appear likely at the outset that each plaintiff's course of dealing with defendant would be relevant); *Compare Derenco, Inc. v. Benj. Franklin Fed. Sav. & Loan Assn.,* 281 Or. 533, 577 P.2d 477 (1978) (class would be certified on a form contract absent evidence that class members had personal knowledge of bank's method of computing interest) *with Bernard v. First National Bank,* 275 Or. 145, 550 P.2d 1203 (1976) (record demonstrated probability "that sufficiently numerous members of the class had knowledge of the Bank's method of charging interest to justify an individual inquiry in each case). The Court has reviewed the affidavits and other materials submitted in connection with the motion, and does not find it likely at this point that individual questions will predominate.

when it is of such universal practice as to justify the conclusion that it became, by implication, a part of the contract." *Id.* § 13–2–2(3).

 In any event, the inquiry into usage of trade is not inconsistent with class treatment. *See Silverstein v. Shadow Lawn Sav. & Loan Assn.,* 51 N.J. 30, 237 A.2d at 478–79. As stated, usage of trade is imported into a contract where it is universal to the extent that individuals are deemed to have knowledge of it. *Id.; Nanakuli Paving & Rock Co. v. Shell Oil Co., Inc.,* 664 F.2d 772, 789–92 (9th Cir.1981); Official Code of Ga. § 13–2–2(3). If the words in Plaintiffs' agreements have come to have a particular meaning defined by reference to their usage in the industry, that meaning would be the same regardless of any individual's subjective understanding.

In addition, it would be unsound as a matter of public policy to decide broadly that a form loan contract issued by a bank is to be interpreted differently in individual cases. Public policy dictates that such contracts be given uniform interpretation throughout a given loan market. *See Broad v. Rockwell Intern. Corp.,* 642 F.2d at 943 (uniformity of indentures desirable to smooth functioning of financial markets). Indeed, the Bank argues in its brief that the contracts at issue have come to have a standard, uniform meaning which should be enforced. It is inconsistent for the Bank to simultaneously assert that its liability on identical language should depend on what was in an individual borrower's mind at the time of the bargain. As a practical matter, it is difficult to believe that the Bank would be satisfied with such a rule.

 The Bank argues that a number of loan agreements are governed by the contract laws of different states. It does appear that the agreements of class members may be governed by the laws of Virginia, Tennessee, or South Carolina in addition to Georgia and North Carolina.[12] And there are differences in the language of the form promissory note and standard real estate note which may or may not be material to the determination of liability. These factors do not preclude class treatment, however. The application of various state laws would not be a bar where, as here, the general policies underlying common law rules of contract interpretation tend to be uniform. *See Jennings Oil Co., Inc. v. Mobil Oil Corp.,* 80 F.R.D. 124, 130 (S.D.N.Y. 1978).[13] And at this point the fact that not

**12.** *See* note 7 *supra;* Exhibit B to Appendix V in Support of Defendant's Memorandum in Opposition to Class Certification.

**13.** The Ninth Circuit recently reversed a district court decision certifying a class in a products liability case involving different state laws on punitive damages. In *In Re Northern District of California, Dalkon Shield IUD Products Liability Litigation,* 526 F.Supp. 887 (N.D.Cal. 1981), *vacated and remanded,* 693 F.2d 847 (9th Cir.1982), the district court certified a nationwide class on the issue of punitive damages on the theory that "the policies underlying such awards do not vary from state to state." 526 F.Supp. at 915. Moreover, the district court determined that the class action would be "capable of identifying and accommodating the interests of other states with a flexible approach to the trial of this lawsuit." *Id.*

The court of appeals vacated because, *inter alia,* the trial court had certified the class on its own motion without giving out-of-state parties an opportunity to brief the issue. On the merits of the certification question the court of appeals analyzed the variations in state law as a commonality issue, and stated that "if com-

monality were the only problem in this case, it might be possible to sustain some kind of a punitive damage class." 693 F.2d at 850. The class was decertified and the case remanded due to the cumulative problems with the other class requirements of typicality and adequacy of representation. Thus, the court did *not* hold that the applicability of different state laws would necessarily preclude class treatment, and the court explicitly stated that class treatment might be appropriate in some such cases.

Here the parties have addressed the issue of state law, and the Court has determined that all other class requirements have been met. Moreover, the Court has examined the common law of contracts of the states possibly involved, and is convinced that there are no material differences that would affect interpretation of the agreements at issue. *Compare* Official Code of Ga.Ann. §§ 13–2–1—13–2–4 (1982) (rules governing construction and interpretation of contracts generally) *and In re Smith,* 436 F.Supp. 469, 475 (N.D.Ga.1977) (purpose of Georgia contract law is to determine intention of the parties by reference to language of contract, surrounding circumstances and applica-

all contracts are identical is not sufficient to overcome the apparent commonality of issues that they present. *Brown v. Cameron-Brown Co.,* 92 F.R.D. at 46; *Janicik v. Prudential Ins. Co. of America,* —— Pa.Super.Ct. ——, 451 A.2d 451, 457; *Silverstein v. Shadow Lawn Sav. & Loan Assn.,* 51 N.J. 30, 237 A.2d 474, 482.

Finally, the Court notes that Rule 23 is flexible, and an order certifying a class may be amended to restrict the class or to create appropriate subclasses. Fed.R.Civ.P. 23(c)(1); *Jennings Oil,* 80 F.R.D. at 130. The Court has discretion to create separate classes based on the initial perceived differences between the types of notes involved here. Moreover, the Court is not to conduct an inquiry into the merits at this stage. *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). If subsequent development of the issues reveals other material differences in the contracts, or different impact of state laws upon them, the Court may create further subclasses or issue such orders as are necessary. *Brown v. Cameron-Brown,* 92 F.R.D. at 46; *Janicik v. Prudential Insurance Co. of America,* —— Pa.Super.Ct. ——, 451 A.2d at 457. And nothing in the Court's decision to treat the common issues on a class basis would preclude the Bank from raising defenses with respect to individual class members. It is this flexibility which enables the Court "to view liberally claims which assert a right to a class action . . . at the early stages of the litigation. . . ." *Green v. Wolf Corp.,* 406 F.2d 291, 298 (2d Cir.1968),

*cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

### 3. *Typicality*

As the Supreme Court stated in *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 157, 102 S.Ct. 2364, 2371 n. 13, 72 L.Ed.2d 740 (1982), "the commonality and typicality requirements tend to merge." Both are designed to assure that the claims of the named plaintiff and the class are sufficiently related—to assure, in other words, that the plaintiff is a member of the class he seeks to represent.

The Bank contends that Morosani's claim is not typical of the class claims because he is subject to a unique personal defense. The Bank contends that Morosani is estopped from asserting a claim on his note based on an opinion letter from his attorney to the Bank that the loan documents "are valid and enforceable in accordance with their respective terms," and also based on Morosani's agreement at the time the loan was preclosed "that there are no set-offs, defenses or counterclaims in favor of Borrower." *See* Appendices R–T to Defendant's Memorandum in Opposition to Class Certification.

Whatever the merits of the argument that such a defense, if successful, would preclude Morosani from representing the class, the Bank's purported defense is spurious. Morosani is not seeking to escape his obligations on the ground that the note is unenforceable; rather, he is seeking to enforce the terms of the agreement.[14] Noth-

---

ble rules of construction) *with National Garage Co. v. George W. McFadden & Bro., Inc.,* 542 S.W.2d 371, 373–74 (Tenn.App.1975) (purpose of contract law to determine intention of parties as expressed in contract and, if contract is ambiguous, by reference to surrounding facts and circumstances) *and Cordaro v. Singleton,* 31 N.C.App. 476, 229 S.E.2d 707, 709 (N.C.App. 1976) (heart of contract is intention of parties which is to be ascertained from language used, the subject matter, the purpose sought and the situation of the parties) *and Harper v. South Carolina Tax Commission,* 267 S.C. 144, 226 S.E.2d 699, 702 (1976) (contract must be construed to carry out intention of parties and, where ambiguous, in light of all attendant and surrounding facts and circumstances) *and Wor-*

*rie v. Boze,* 191 Va. 916, 62 S.E.2d 876, 880 (1951) (contract to be construed to determine intention of parties as disclosed by the language, the subject matter, and the condition and relation of parties).

14. The Bank cites a recent district court decision refusing to certify a class in a similar "prime rate" case due to lack of typicality on the ground that the named plaintiff was subject to a unique personal defense of accord and satisfaction and/or release. *Beaver Falls Thrift Corp. v. Commercial Credit Business Loans, Inc.,* 563 F.Supp. 68 (W.D.Pa.1983). In *Beaver Falls,* there appeared to be a substantial question whether the plaintiff had released the claim raised by the lawsuit. Without passing on that Court's conclusion that the possible

ing in his position in this lawsuit is inconsistent with his agreement with the Bank at the time the note was executed. The Court finds that the typicality requirement is satisfied.

### 4. *Adequacy of Representation*

■ Rule 23(a)(4) requires that "the representative parties ... fairly and adequately protect the interest of the class." Adequacy of representation generally turns on the qualifications of plaintiffs' counsel and an absence of antagonism between representatives and class members. *In Re Northern District of California, Dalkon Shield IUD Products Liability Litigation,* 693 F.2d 847, 855 (9th Cir.1982).

The Bank argues that Kleiner is not an adequate class representative. In fact, the Bank devotes a considerable portion of its brief and supporting materials to an *ad hominem* attack on Kleiner, who is a member of the Georgia Bar and a Georgia Tech professor of business and finance, based upon alleged misconduct in past litigation and an "established lack of credibility." The Bank cites prior decisions of this Court holding that "class certification 'should be denied where it appears that the representative could not serve in a fiduciary capacity because of past misconduct.' " *Kornick v. Talley,* 86 F.R.D. 715, 721 (N.D.Ga.1980) *quoting Amswiss International Corp. v. Heublein, Inc.,* 69 F.R.D. 663, 671 (N.D.Ga. 1975).

In support of its allegations the Bank offers the following material:

(1) the affidavit of Sidney O. Smith, Jr., formerly Chief United States District Judge for the Northern District of Georgia, in which Judge Smith states his belief that Kleiner gave false testimony as a plaintiff in a personal injury case before Judge Smith in 1973 and 1974. *Kleiner v. Arinno,* No. 17520. Judge Smith also states his opinion that the manner in which Kleiner prosecuted his personal injury claim was a "perversion of the judicial process." Ap-

pendix A to Defendant's Memorandum in Opposition to Motion for Class Certification;

(2) the affidavits of M. Vernon Appenzeller, a former employee of Defendant Tharpe & Brooks mortgage bankers, and Thomas R. Agnew, vice president of First National Bank, alleging that Kleiner gave false information on loan applications by failing to disclose that he had previously been declared bankrupt. Appendices D and P to Defendant's Memorandum in Opposition to Class Certification;

(3) affidavits from Appenzeller, from Dennis G. Bull, and from Richard M. Kirby, counsel for the Bank, alleging that Kleiner was "loud," "abusive" and "threatening" in attempts to interrogate and depose Appenzeller in connection with a loan application made by Kleiner in 1979. Appendices D, E and F to Defendant's Memorandum in Opposition to Class Certification;

(4) a letter to Kleiner's attorney from the Assistant United States Attorney stating that a federal investigation had been conducted into charges that Kleiner failed to disclose a prior bankruptcy on loan applications in violation of federal law, and stating that the investigation concluded that Kleiner did not violate federal law. Appendix G to Defendant's Memorandum in Opposition to Class Certification.

The Court has carefully considered the Bank's allegations and supporting evidence, but concludes that the evidence, considered separately or taken as a whole, does not demonstrate that Kleiner would be an inadequate class representative. The affidavit testimony of Judge Smith concerning his mental impressions of a party to a trial which occurred eight years ago is not admissible evidence and therefore may not be considered. *See Fayerweather v. Ritch,* 195 U.S. 276, 306–07, 25 S.Ct. 58, 67–68, 49 L.Ed. 193 (1904); *Washington v. Strickland,* 693 F.2d 1243, 1263 (11th Cir.1983) (en banc) (per curiam) (separate opinion of Vance, J.).

defense would preclude class certification, this Court finds no such substantial question whether Morosani has relinquished his claim.

Nothing in *Beaver Falls* is inconsistent with the Court's decision here.

The allegations that Kleiner's behavior toward Appenzeller may have been bellicose, even if true, are of marginal relevance to the question whether Kleiner can adequately represent a class in this case. More disturbing is the allegation that Kleiner lied about his financial condition on loan applications with the Bank. The Bank has produced evidence that Kleiner failed to report a prior bankruptcy on applications for loans in 1979. It was this failure for which Kleiner was investigated by the United States Attorney. The evidence is far from conclusive, however, and is not sufficient to allow this Court to draw a conclusion one way or another about Kleiner's honesty in the loan transaction or his "capacity for truthfulness" in general. There never has been an adjudication of the loan charges against Kleiner. Moreover, although the United States Attorney found that "Kleiner did omit to disclose a prior adjudication of bankruptcy," he also found that bank officials were aware of Kleiner's bankruptcy before they disbursed the loan proceeds. The record is not conclusive that Kleiner's omission was deliberately dishonest or in bad faith.

Finally, the Court notes that the breach of contract claims involved in this case are not the type of claims to which evidence of Kleiner's character or integrity would be relevant. This is not an equitable proceeding in which evidence of a plaintiff's behavior could be important, and in which a questionable named plaintiff might therefore prejudice the adjudication on the merits for the entire class. This is strictly a matter of contract interpretation.

This is not to suggest that a court need not inquire into the adequacy of representation in a class action such as this. Certainly

if the Court found that Kleiner was not able to fulfill the fiduciary responsibilities of class representative, this class would not be certified. But after considering the lack of a clear resolution on Kleiner's prior conduct, Kleiner's status as a member in good standing of the Georgia Bar, and the nature of the claims involved in this lawsuit, the Court finds the Bank's allegations insufficient to overcome the presumption that litigants in general, including Jackie Kleiner, will conduct themselves honorably before the Court.[15]

Plaintiffs' attorneys are experienced and qualified to represent the class. The Court finds the requirement of Rule 23(a)(4) to be satisfied. Based on all that has been said, the Court also finds that a class action would be superior to other available methods for adjudicating this controversy. Fed. R.Civ.P. 23(b)(3).

### C. The Truth-in-Lending Claim

As a general rule, claims under the Truth-in-Lending Act may be certified as class actions in appropriate cases. *Goldman v. First National Bank,* 532 F.2d 10 (7th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976); *Brame v. Ray Bills Finance Corp.,* 85 F.R.D. 568, 575 (N.D.N.Y. 1979). The Act was amended in 1974 specifically to provide for class actions, albeit with a ceiling imposed on liability to protect creditors from "catastrophic judgments." 15 U.S.C. § 1640(a)(2)(B) (1982); *Brame,* 85 F.R.D. at 574. The requirements of Rule 23 still must be satisfied in each case. *Boggs v. Alto Trailer Sales, Inc.,* 511 F.2d 114, 117 (5th Cir.1975).

Viewed through the Rule 23 requirements of numerosity or typicality,[16] Kleiner's mo-

---

**15.** Kleiner has moved to exclude certain exhibits offered in support of the Bank's argument that Kleiner is an inadequate representative. In view of the Court's disposition on this point, the motion is moot.

**16.** The Bank urges that Kleiner is not a member of the class he purports to represent because he rescinded the real estate note and therefore has suffered no injury. Although rescission would affect a breach of contract

claim, it does not bar a claim under the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.*

The rescission and damages provisions of the Act, 15 U.S.C. §§ 1635 and 1640, are not mutually exclusive remedies; a borrower may be entitled to both rescission and damages. *Gerasta v. Hibernia National Bank,* 575 F.2d 580, 583 (5th Cir.1978). The damages provision is a "civil penalty" which depends not on the finance charge incurred but on the lender's failure to make disclosure. *Eby v. Reb Realty,*

tion to certify a truth-in-lending subclass is problematic. It appears that the facts giving rise to Kleiner's truth-in-lending claim are somewhat unusual, so that the Court has serious doubts whether there is a numerous class of persons who share his claim. Kleiner's $115,000 real estate loan was subject to TILA disclosures only because it was secured by an interest in his personal residence. *See* note 3 *supra.* Loans over $25,-000 ordinarily are exempted from TILA, unless they are secured by an interest in "real property, or in personal property used or expected to be used as the principal dwelling of the consumer...." 15 U.S.C. § 1603(3). Moreover, the Bank's general policy on loans subject to TILA does not provide for interest at a variable or floating rate; and interest on such loans is generally computed on the basis of a 365-day year. Appendix N to Defendant's Memorandum in Opposition to Class Certification.

Absent some further showing, the Court will not presume the existence of a class sharing Kleiner's unusual situation with respect to TILA. Kleiner's motion to certify a truth-in-lending subclass is denied.

### III. Conclusion

■ Plaintiffs' motions for class certification on the breach of contract claims are GRANTED and the cases are hereby consolidated. Kleiner's motion to certify a truth-in-lending subclass is DENIED. Defendant's motion to dismiss the National Bank Act claims in *Kleiner,* No. C80–921, is GRANTED. The Court ORDERS that the following classes be certified, with Plaintiffs to bear the burden and costs of preparing the notices and notifying class members:

(1) All persons who borrowed money from Defendant First National Bank of Atlanta and who signed promissory notes between May 28, 1978 and May 31, 1981 stating that interest would be paid at a percentage rate "in excess of the rate charged by [the] bank from time to time to its best commercial borrowers with

respect to ninety (90) day borrowings. (the "Prime Rate")."

(2) All persons who borrowed money from Defendant First National Bank of Atlanta and who signed real estate notes from August 18, 1978 to the present containing the following language stating that interest would be paid at a percentage rate above

the "prime rate" currently charged from time to time by [the bank] to its best and most credit worthy commercial customers.... If at any time or from time to time such prime rate increases or decreases, then the rate of interest hereunder shall be correspondingly increased or decreased effective on the day on which any such increase or decrease of such prime rate is publicly announced. In the event that [the bank], during the term hereof, shall abolish or abandon the practice of publishing the prime interest rate, or should the same become unascertainable, Holder shall designate a comparable reference rate which shall be deemed to be the "prime rate" hereunder.

(3) All persons who borrowed money from Defendant First National Bank of Atlanta and who signed notes from May 28, 1978 to the present stating that interest was to be calculated on a "per annum" basis or a "360-day year simple interest basis."

Counsel are directed to confer and to prepare and submit to the Court a proposed notice to class members for each of the three classes within 30 days. With respect to the third class certified above, counsel are directed to describe the "per annum" or "360-day year simple interest claim" with greater clarity, sufficient to apprise a recipient of the notice whether he is within the class.

*Inc.,* 495 F.2d 646 (9th Cir.1974). Thus, a borrower may seek damages under section 1640

even though he has rescinded the underlying loan agreement.