In October 1991, Catherine Lackey and her husband, James Lackey, purchased a one-year certificate of deposit ("CD") from Central Bank of the South.[1] The CD carried an interest rate of 5.875%. The "certificate of deposit disclosure statement" that accompanied the CD provided that the CD would be "automatically renewed unless the bank sends written notice to the contrary."
In October 1992, before the Lackeys' CD had matured, Central Bank sent them a "maturity renewal notice" form. That form contained the following language:
 "DEAR CUSTOMER, ON THE DATE SHOWN BELOW YOUR CERTIFICATE OF DEPOSIT MATURES AND WILL BE AUTOMATICALLY RENEWED IN ACCORDANCE WITH THE TERMS OF OUR AGREEMENT. WHEN YOUR CERTIFICATE MATURES, YOU WILL RECEIVE ANOTHER NOTICE EXPLAINING THE RENEWAL TERMS AND RATE. YOU HAVE UP TO TEN DAYS AFTER THE MATURITY DATE TO REDEEM THE CERTIFICATE WITHOUT PENALTY IF YOU PREFER OTHER RENEWAL TERMS."
The form also had a blank for the renewal interest rate, but Central Bank did not complete that line. Ultimately, Central Bank informed the Lackeys that the new interest *Page 421 
rate for the CD would be 3.55% and that if they were dissatisfied with the renewal terms, they could redeem the CD, without penalty.
Catherine Lackey sued Central Bank, alleging that the Bank's renewal of the CD at 3.55% constituted a breach of contract. She brought the action on behalf of a putative class of Central Bank CD customers, claiming that these other customers had suffered a similar injury. Initially, the trial court granted Mrs. Lackey's motion for class certification, and this Court refused to grant two mandamus petitions filed by Central Bank seeking to have the certification order overturned.[2]
However, in March 1997, the trial court, after considering the parties' arguments and briefs, entered an order decertifying the class. The trial court concluded that, although the certificate of deposit disclosure statement unambiguously stated that the CD would be renewed under its original terms unless Central Bank provided notice to the contrary, Central Bank's renewal notice form was ambiguous. Specifically, the trial court determined that the renewal notice form could reasonably be read as providing notice that Central Bank intended to renegotiate the terms of the certificate of deposit, thereby satisfying the notice requirement of the CD contract. In making this determination, the trial court noted that the renewal notice form told the customers that they would receive another notice explaining the renewal interest rate and noted that Central Bank had not filled in the blank provided for the renewal interest rate.
To cure the ambiguity in the renewal notice form, the trial court concluded that extrinsic evidence, including testimony concerning how each customer had interpreted Central Bank's renewal notice form, would be admissible to determine the meaning of the renewal notice form. After determining that Central Bank could admit testimony as to how each individual customer had interpreted the renewal notice form, the trial court found that the need for individualized inquiry made class certification improper. Lackey challenges this decertification order.
The decision to certify or not to certify a class action is reviewed under an abuse-of-discretion standard. See, e.g.,Butler v. Audio/Video Affiliates, Inc., 611 So.2d 330, 331
(Ala. 1992) ("Certification of a class is within the trial court's discretion, and we will reverse a certification ruling only for an abuse of discretion."). Therefore, the issue in this case is whether the trial court abused its discretion when it determined that class certification was not proper for the breach of contract claim. After reviewing the trial court's decertification order and the record in this case, we conclude that the trial court did not abuse its discretion.
The linchpin of Lackey's underlying breach of contract claim is the argument that Central Bank failed to provide the "notice to the contrary" referred to in the certificate of deposit disclosure statement and, therefore, that the CD should have been renewed under its original terms.[3] This argument in turn depends on the legal significance assigned to Central Bank's renewal notice form; if the renewal notice form constituted notice that Central Bank did not intend to automatically renew a customer's CD at the original interest rate, then Central Bank may have complied with its CD contract. For purposes of class certification, however, we are not concerned with the merits of Lackey's underlying claim. For purposes of this appeal, the critical issue is more narrow: whether extrinsic evidence will be admissible to determine how each individual class member interpreted the renewal notice form. *Page 422 
We agree with the trial court that the language contained in Central Bank's renewal notice form is ambiguous. Specifically, we believe that it is possible that a trier of fact could determine that the renewal notice form indicated that the renewal terms and interest rate would be modified if the certificate of deposit were renewed. Because the renewal notice form is ambiguous, parol evidence, including evidence of the way in which the parties to the contract interpreted the language of that form, will be admissible to determine its meaning. See, e.g., Hartford Acc. Indem. Co. v. Morgan CountyAss'n of Volunteer Firefighters, 454 So.2d 960, 961 (Ala. 1984) ("Once the court concludes the instrument is ambiguous or uncertain in any respect, determination of the true meaning of the contract is a question for the factfinder. . . . The surrounding circumstances, including the construction placed on the language by the parties, are taken into consideration in order to ascertain the intention of the parties."). We note that Lackey presents two arguments against admitting parol evidence to determine the meaning of the renewal notice form, assuming that that form was ambiguous. First, she contends that if the renewal notice form is ambiguous, it should be held ineffective as a matter of law, thereby negating any need for an individual inquiry into how each customer interpreted the form. We cannot agree with this argument. To support her argument, Lackey relies on Simmons Mach. Co. v. M MBrokerage, Inc., 409 So.2d 743 (Ala. 1981). However, SimmonsMachinery is inapposite to the present class certification dispute. That case involved the notice requirements of Article Nine of the Uniform Commercial Code, not the construction to be given to a notice such as is involved in the present case. We do not believe that Central Bank's renewal notice form was invalid as a matter of law.
Lackey also asserts that, under the rule of contraproferentem, any ambiguity in the renewal notice form must be construed against Central Bank, the party that wrote the form. While Lackey has accurately described a rule of proper contract interpretation, that rule does not mandate class certification in this case. Instead, the rule of contra proferentem is generally a rule of last resort that should be applied only when other rules of construction have been exhausted. 3 Arthur L. Corbin, Contracts § 559 at 268-69 (1962); see also Molton,Allen Williams, Inc. v. St. Paul Fire Marine Ins. Co.,347 So.2d 95, 99 (Ala. 1977) (indicating that ambiguities must be interpreted against the party drawing the contract if the circumstances surrounding the contract do not make the terms clear). Therefore, we do not believe the rule of contraproferentem prohibits the admission of any extrinsic evidence in this case.[4]
In summary, the way in which Lackey and other Central Bank customers interpreted the ambiguous renewal notice form is relevant to the issue whether Central Bank breached its CD contract; therefore, if Lackey's claim were certified as a class action, then the trial court could be confronted with testimony from literally thousands of customers regarding the way in which they each interpreted the renewal notice form. We cannot hold that the trial court abused its discretion by decertifying the class. See Ala. R. Civ. P. 23(b)(3).
AFFIRMED.
HOOPER, C.J., and SEE, J., concur.
COOK, J., concurs in the result.
SHORES and KENNEDY, JJ., dissent.
HOUSTON and BUTTS, JJ., recuse themselves.
[1] Central Bank of the South is now known as "Compass Bank." However, for purposes of this opinion, we will refer to this party as "Central Bank."
[2] A more complete summary of the underlying facts and procedural history of this case may be found in Ex parte Central Bank ofthe South, 675 So.2d 403 (Ala. 1996), in which this Court refused to grant Central Bank's mandamus petition seeking to overturn the certification order but did modify the definition of the class.
[3] For purposes of this appeal only, we have accepted the trial court's conclusion that the CD contract itself was unambiguous and required notice that the CD would not be automatically renewed at the original interest rate. However, we note that Central Bank contends that the CD contract did not unambiguously state that if the relevant CD is renewed it would be renewed under the original terms.
[4] Lackey also argues that class certification is proper in this case pursuant to Kleiner v. First Nat'l Bank of Atlanta,97 F.R.D. 683 (N.D. Ga. 1983). However, in Kleiner, the court specifically noted that neither side had asserted that the contractual provisions at issue were ambiguous. Id. at 693. Therefore, Kleiner is factually inapposite to the present case. In addition, the court in Kleiner noted that its decision to certify the class may not have been supported by other federal decisions. Id. at 692-93. *Page 423