834 So.2d 67 (2002)
GENERAL MOTORS ACCEPTANCE CORPORATION and Yerby Chevrolet, Inc.
v.
Randall DUBOSE.
1001060.
Supreme Court of Alabama.
January 18, 2002.
As Modified on Denial of Rehearing May 3, 2002.
Harlan I. Prater IV and Sara Anne Ford of Lightfoot, Franklin & White, L.L.C., Birmingham, for appellants.
Clatus Junkin and Charles E. Harrison of Junkin & Harrison, Fayette, for appellee.
PER CURIAM.
Yerby Chevrolet, Inc., and General Motors Acceptance Corporation ("GMAC") appeal the trial court's certification of two classes of plaintiffs in a class action, pursuant *68 to the provisions of § 6-5-642, Ala. Code 1975.[1]
One issue is presented on appeal: Did the trial judge abuse his discretion in certifying two classes of plaintiffs under the provisions of Rule 23(b)(3), Ala.R.Civ.P.? Based on the facts of this case and the applicable law, we believe that he did, and we reverse and remand.

Facts
In 1995, Randall Dubose leased a sportutility vehicle from Yerby Chevrolet. The lease was financed by GMAC. Following the termination of his lease, Dubose, who had paid what his lease agreement required him to pay, decided that he had been improperly charged a rental tax that the State of Alabama imposes on the lessors of automobiles. See § 40-12-222, Ala.Code 1975.[2] GMAC claims that Alabama tax regulations expressly recognize that the rental tax may be passed along to consumers. See Ala. Dep't of Rev. Rule 810-6-5-.09(15)("If rental tax is billed or passed along to the lessee as a tax or additional cost of the lease, this additional amount is to be included as part of the taxable proceeds from the lease.").
GMAC admits that "[b]efore July 1, 1997 [the date GMAC revised its lease agreement to reflect a separate charge for the Alabama rental tax], [it] did not bill lessees separately for the Alabama rental tax," but "[r]ather, to recoup the costs associated with accounting for and paying the tax, for some period of time before July 1997 GMAC increased its base lease rate by 0.6% for leases acquired from Alabama dealerships." (GMAC's brief, pp. xxi.) GMAC admits that "[e]ffective July 1, 1997, this practice was changed for competitive reasons," and that "[t]he rental tax is now billed to lessees as a separate item." (GMAC's brief, p. xi.)
The lease agreement contained the following provision:
"You agree to pay all taxes related to the Lease or the vehicle that are levied on you, the vehicle, or us, except for taxes on our net income and the Alabama Rental Tax."
It is undisputed that the evidence before the trial court in this case showed that the customers who leased automobiles from Yerby Chevrolet and GMAC were charged.6 percent of the total amount of the lease, which GMAC then used to pay the rental tax. This amount was not shown as a separate item and it was not disclosed as a rental tax, but was included as a part of each lessee's monthly lease payment.
The record shows that after September 23, 1997, GMAC required its dealers to pass through the 1.5 percent rental tax to consumers. GMAC, on September 23, 1997, notified "ALL DEALERS" of the change in policy:
"As you know, GMAC reduced the lease rate for Alabama-garaged vehicles, .60 P.P. and leases are passing through a 1.5% auto rental tax. Effective immediately, dealers must complete the following changes on all leases submitted on the Alabama version of the GMAC SmartLease Agreement:
"....

*69 "On the 671 SLM-AL and 671 SLS.AL (Version 8):
"In item 3 of these Lease Agreements, in the sentence, `You will pay all taxes on the lease or the vehicle that the government levies on you, the vehicle, or us (except our net income taxes and the Alabama Rental Tax).,' strike through the words `And the Alabama Rental Tax.' The lessee and co-lessee, if applicable, must initial this strikeover.
"Revised lease agreements are forthcoming."
(Bold print original.)
Dubose sued GMAC and Yerby Chevrolet, alleging breach of contract, suppression, misrepresentation, "quasi-contract and unjust enrichment," and theft by deception because some of the money he paid pursuant to his lease agreement was used by GMAC to pay the rental tax. On February 2, 2001, the trial court certified two classes, the Yerby Class and the GMAC Class.[3] The trial court described these classes as follows:

"The Yerby Class, consisting of those residents of the State of Alabama who leased a vehicle from Yerby Chevrolet at any time within twenty (20) years prior to September 23, 1997.

"The GMAC Class, consisting of those residents of the State of Alabama who have leased a vehicle from GMAC, whether through Yerby Chevrolet or otherwise, at any time within twenty (20) years prior to September 23, 1997."
(Bold print original.)
The trial court's order in certifying these classes reads, in pertinent part, as follows:
"The Court finds also that, if the allegations made by the plaintiff in the complaint are in fact true, there are questions of law and fact common to the members of the class.
"(1) The evidence before the court is that in 1995, the plaintiff went to Yerby Chevrolet to lease a 1995 Chevy Blazer. The GMAC Lease Agreement entered into between the plaintiff and Yerby Chevrolet states, as per `Rental/Use Tax': `N.A.' (i.e., Not Applicable). The Agreement also states: `you agree to pay all taxes related to the Lease or the vehicle that are levied on you, the vehicle, or us, except for taxes on our net income and the Alabama Rental Tax' (emphasis added [by trial court]). Additionally, the `Leasing Worksheet' completed by Yerby states at line 29a:
"29. Items Not Capitalized
"a. Rental/Use Tax (Rate 0 %) + $ N.A.
"(2) The evidence is undisputed that, despite the language of the Agreement, the plaintiff was charged 0.6% of the total amount financed in payment of the Alabama Rental Tax.
"(3) Although GMAC at present has its dealers pass through a 1.5% rental tax to the consumer and ... this is made explicit to the consumer on its forms, the evidence is undisputed that this was not the case prior to September 23, 1997.
"(4) The Court finds there are common questions of law and fact as to whether the defendants suppressed and concealed material facts from the plaintiff and the plaintiff classes:
"(A) The Court finds that the evidence is not disputed that prior to September 23, 1997, neither *70 GMAC nor its dealers disclosed to consumers that the consumer was being charged for the Alabama Rental Tax, even though the forms used by GMAC and its dealers stated that the consumer was not so charged. The testimony was that all of the transactions involving putative class members are and have been done on substantially identical paper and forms. Whether this constitutes suppression and concealment is a common question of fact and law.
"(B) The Court finds also that there are common questions of fact and law as to the misrepresentations by the defendants to the plaintiff and the plaintiff classes. Specifically, there is a common question as to whether the defendants, by and through the documents used in each transaction, misrepresented to the plaintiff and to each member of the class prior to September 23, 1997, that the defendants were not collecting the Alabama Rental Tax from the plaintiff and other class members, when the defendants were in fact collecting an amount in excess of the amount permitted under the Alabama Rental Tax. A reasonable interpretation of the documents prepared by GMAC and provided to the dealers is that the documents contain representations to the plaintiff, and to other class members prior to September 23, 1997, and that they were not collecting the Alabama Rental Tax from the plaintiff and the plaintiff class, and that the defendants then proceeded to collect not only that tax, but an amount in excess of that permitted by Ala.Code § 40-12-222. There is a question of law and fact common to the class as to whether this constitutes misrepresentation.
"(C) The evidence tends to show that the calculation, charging and collecting of monies for the Alabama Rental Tax ... was uniform across the class. The fact that the dollar amount collected may have varied from class member to class member is relevant only to the question of damages, and not to any questions of law or fact involved in certification or even as to the merits of the case."

I.
In reviewing an order of a trial court that allows a class certification, this Court has held:
"The trial court is endowed with a substantial amount of discretion in determining whether to certify a class, and we will not disturb its determinations without a showing of abuse. Ex parte Holland, 692 So.2d 811, 814 (Ala.1997). In determining whether certification was proper, we consider whether the party seeking certification produced substantial evidence satisfying the requirements of Rule 23(a), Ala.R.Civ.P. Ex parte Green Tree Fin. Corp., 684 So.2d 1302, 1307 (Ala.1996). Rule 23(a) reads, in pertinent part:
"`Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses *71 of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.'
"These four requirements are commonly referred to respectively as (1) `numerosity,' (2) `commonality,' (3) `typicality,' and (4) `adequacy.' `Numerosity and commonality concern the entire class, while typicality and adequacy concern the nexus of the named class representatives with the class itself.' Warehouse Home Furnishing Distribs., Inc. v. Whitson, 709 So.2d 1144, 1148 (Ala.1997)."
Atlanta Cas. Co. v. Russell, 798 So.2d 664, 666 (Ala.2001).

II.
GMAC and Yerby Chevrolet argue that certification of a class in this case is improper for several reasons. First, they cite Mann v. GTE Mobilnet of Birmingham Inc., 730 So.2d 150 (Ala.1999), for the argument that the lease agreement "is ambiguous" and that that ambiguity "is fatal to [certification of the class]." 730 So.2d at 155. In Mann, this Court held: "The conclusion that the contract is ambiguous is fatal to Mann's claim. He cannot satisfy the commonality requirement of Rule 23(a)(2) as to questions of fact, because the evidence necessary to resolve those questions of fact will vary from case to case." 730 So.2d at 155.
In arguing that the lease agreement is ambiguous, GMAC and Yerby Chevrolet cite the following provision of the agreement:
"OFFICIAL FEES AND TAXES
"You agree to pay all fees and charges for titling, registering, licensing, testing, and inspecting the vehicle that any government authority requires during the term of this Lease. You agree to pay all taxes related to the Lease or the vehicle that are levied on you, the vehicle, or us, except for taxes on our net income and the Alabama Rental Tax. We will include the taxes you must pay in the Payment Due at Lease Signing or in your Monthly Payment or we will bill you separately. We may change your Monthly Payment for increases or decreases in taxes, including increases or decreases that may result from a change in the vehicle's location for tax purposes."
GMAC and Yerby Chevrolet also note that according to Joyce Wiedman, GMAC's operations manager, the quoted provision means that the customer "would not be separately billed for the rental tax in addition to the monthly base lease payment." They point out that Dubose interprets the language to mean that "none of these monies [paid by the customer] is going to pay rental tax." On the other hand, Dubose charges that GMAC and Yerby Chevrolet are suggesting "a disingenuous and implausible `interpretation' of this language [to] inject ambiguity into this case where it does not exist." (Dubose's brief, p. 12.)
Dubose argues that the facts presented in this case present common questions of law and fact as to whether GMAC made a misrepresentation of fact to the putative class to the effect that it was not collecting the Alabama rental tax, when in fact it was collecting that tax and more. Dubose, in his brief to this Court, states:
"Until September 23, 1997, GMAC sought to pass on to the consumer the costs of the Alabama Rental Tax by adding 0.6 percent to the interest rates of leases financed. On the hypothetical $30,000.00 lease, for instance, assuming an interest rate of 8 percent per annum over a four-year term, GMAC would increase the annual interest rate to 8.6 percent. The gross amount collected from the consumer for rental tax would therefore be $720.00, an additional *72 $270.00 more than the amount imposed by § 40-12-222. This amount could vary somewhat depending on the sales price of the vehicle. In most cases, the amount of injury would be greater than the amount shown in this example."
(Dubose's brief, p. xi; footnote omitted.)
This Court, citing Underwood v. South Central Bell Telephone Co., 590 So.2d 170 (Ala.1991), has stated, "It is axiomatic that the question whether a contract is ambiguous is for the trial court." Mann, 730 So.2d at 154. Thus, the question is not whether the parties have differing interpretations of allegedly ambiguous language; whether there is an ambiguity is for the trial court to determine. In Winkleblack v. Murphy, 811 So.2d 521, 525 (Ala.2001), this Court stated:
"The question whether a contract is ambiguous is for a court to decide. State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293 (Ala.1999). As long as the contractual terms are clear and unambiguous, questions of their legal effect are questions of law. Commercial Credit Corp. v. Leggett, 744 So.2d 890 (Ala. 1999). Thus, we apply a de novo review to a trial court's determination of the legal effect of an unambiguous contract term."
See also Woodall v. Alfa Mut. Ins. Co., 658 So.2d 369 (Ala.1995).
In Mann, supra, this Court determined that the language in GTE's contract that provided that customers would be billed "per minute" was ambiguous, because the language was "susceptible to more than one reasonable interpretation by the various members of the proposed class." 730 So.2d at 155. We held that Mann had not satisfied the commonality requirement because the evidence necessary to resolve questions of fact would vary from case to case. Id.
"An `instrument is unambiguous if only one reasonable meaning clearly emerges.'" Sealing Equip. Prods. Co. v. Velarde, 644 So.2d 904, 908 (Ala.1994), quoting Reeves Cedarhurst Dev. Corp. v. First Amfed Corp., 607 So.2d 184, 186 (Ala.1992).
The question for this Court to decide is whether one reasonable meaning of the clause in the lease agreement relating to the payment of taxes emerges. The lease agreement specifically states: "You agree to pay all taxes related to the Lease or the vehicle that are levied on you, the vehicle, or us, except for taxes on our net income and the Alabama Rental Tax." (Emphasis added.) On the other hand, the two sentences that follow that sentence in the lease agreement state: "We will include the taxes you must pay in the Payment Due at Lease Signing or in your Monthly Payment or we will bill you separately. We may change your Monthly Payment for increases or decreases in taxes, including increases or decreases that may result from a change in the vehicle's location for tax purposes." These sentences refer to the Alabama rental tax, thus creating an ambiguity. The evidence shows that when Dubose signed the lease agreement, a charge for the Alabama rental tax was already included, as allowed by these last two sentences of the portion of the lease agreement entitled "Official Fees and Taxes."
This ambiguity prevents Dubose from satisfying the "commonality" requirement of Rule 23(a)(2), Ala.R.Civ.P., and forecloses the conclusion that "common issues predominate" in these class actions. See Mann, 730 So.2d at 155, Lackey v. Central Bank of the South, 710 So.2d 419, 420-22 (Ala.1998). What prevents commonality here and, therefore, prevents disposition of these cases as a class action is that resolving this ambiguity requires the finder of *73 fact to determine how each class member has interpreted the ambiguous language.
In fact, in this case, there is evidence indicating that when Dubose sat down with the Yerby Chevrolet representative to finalize the lease agreement, the representative pointed out certain provisions and summarized the agreement but did not read word-for-word the language quoted above. The record shows that Dubose could not remember if he read this portion of the lease agreement before he signed the agreement. Neither could he recall whether a Yerby Chevrolet representative told him "there would be a rental tax, but he didn't tell him what percentage or anything... it would be." The record shows that when Dubose began to question the validity of the charge for the tax, he understood that the tax would have to be paid. He testified: "I knew that I had paid it because ... you know, it's a tax. You have to pay a tax." He also admitted that even if the Yerby Chevrolet representative had expressly told him that the rental tax was factored into his monthly lease payments, he would have gone ahead with the transaction.
There was other testimony presented by Yerby Chevrolet and GMAC indicating that lessees often do not read the terms of the lease agreements before signing the agreements, and that sometimes customers ask questions about the lease and other times they do not, and that some ask specifically about the rental tax, but that others do not.
In addition to the above, we take judicial notice that after this appeal was filed, on May 21, 2001, Act No. 2001-636, Ala. Acts 2001, became effective. It provides that "[t]he provisions of this act shall have retroactive effect to January 1, 1988" and that "[i]t is ... the intent of the Legislature to permit lessors of tangible personal property to pass on to lessee such license or privilege[ ] taxes by adding such taxes to the leasing price or otherwise...." Act No. 2001-636 further provides, "The purpose of this amendatory act is to clarify and insure the implementation of the actual purpose and original intent of the Legislature when it enacted this article."

III.
Applying our scope of review and the applicable law, and after carefully reviewing the record in this case and considering the arguments of the parties, we are of the opinion that the trial judge did abuse his discretion in certifying the two classes in this case.
Based on the foregoing, we reverse the judgment of the trial court, and remand the cause to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and STUART, J., concur.
HOUSTON and WOODALL, JJ., concur specially.
SEE and BROWN, JJ., concur in the result.
LYONS, JOHNSTONE, and HARWOOD, JJ., concur in the result in part and dissent in part.
HOUSTON, Justice (concurring specially).
This case arises out of a lease for an automobile. The State of Alabama imposes a tax on lessors of automobiles. Ala. Code 1975, § 40-12-222. The Alabama tax regulations expressly recognize that the tax may be passed along to consumers. Ala. Dep't of Rev. Rule 810-6-5.-09(15). ("If rental tax is billed or passed on to the lessee as a tax or additional cost of the lease, this additional amount is to be included as a part of the taxable gross proceeds *74 from the lease.") On May 21, 2001, Act No. 2001-636, Ala. Acts 2001, became effective; it provides it "shall have retroactive effect to January 1, 1988" and that "[i]t is ... the intent of the Legislature to permit lessors of tangible personal property to pass on to lessees such license or privilege[ ] taxes by adding such taxes to the leasing price or otherwise." Act No. 2001-636 further provides: "The purpose of this amendatory act is to clarify and insure the implementation of the actual purpose and original intent of the Legislature when it enacted this article."
Randall Dubose leased a sport-utility vehicle from Yerby Chevrolet, Inc. Dubose's lease was financed by General Motors Acceptance Corporation ("GMAC").
The following language appears in the lease:
"You [Dubose] agree to pay all taxes related to the Lease or the vehicle that are levied on you, the vehicle, or us, except for taxes on our [GMAC's and Yerby Chevrolet's] net income and the Alabama Rental Tax."
Dubose argues that this language means that none of the monies Dubose paid pursuant to the lease would go to pay the rental tax, while, in fact, some did.
This is a class action, alleging breach of contract, suppression, misrepresentation, "quasi-contract and unjust enrichment," and theft by deception because some of the money Dubose paid under the lease went to pay the rental tax.
GMAC and Yerby Chevrolet argue that the above-quoted provision in the lease agreement informed the customer that the customer would not be separately billed for the rental tax, just as he would not be separately billed for GMAC's or Yerby's income tax on the transaction.
The best that can be said for Dubose's position is that the above-quoted provision in the lease agreement is ambiguous. The ambiguity prevents Dubose from satisfying the "commonality" requirement of Rule 23(a)(2), Ala.R.Civ.P., and forecloses the conclusion that "common issues predominate" in these class actions. Mann v. GTE Mobilnet of Birmingham Inc., 730 So.2d 150, 155 (Ala.1999); Lackey v. Central Bank of the South, 710 So.2d 419, 420-22 (Ala.1998). What prevents commonality and therefore proper class disposition of such a case is that resolving the ambiguity requires the finder of fact to determine how each class member interpreted the ambiguous language.
Although he sings out of a different book in his good brief before this Court, at the certification hearing before the trial court, Dubose's attorney argued:
"The Defendants contend that this is just our interpretation of the way the language reads, and they offer a different interpretation in their brief, which is that the lessee will not be charged a separate amount for this [rental tax]. Your Honor, that's what juries are for. A jury should be able to decide which is the correct interpretation ... and that, in no way, impedes [certification]."
However, that should impede certification, Mann and Lackey, and the two classes should be decertified. I concur to reverse the judgment and to remand the case.
WOODALL, J., concurs.
LYONS, Justice (concurring in the result in part and dissenting in part).
I concur in the result as to the reversal of certification on the tort claims, but I dissent as to the reversal of certification on the contract claim.
*75 JOHNSTONE, Justice (concurring in the result in part and dissenting in part).
I concur in the result of reversing the certification of the classes on the fraud claims. The correct reason for this ruling is that the issue of reliance in a fraud claim usually requires individualized proof, which negates the commonality required by Rule 23(a)(2), Ala. R. Civ. P. Ex parte Household Retail Servs., Inc., 744 So.2d 871 (Ala.1999). That is, some prospective lessees would have proceeded to lease vehicles and some would not, had they known the truththat they would be paying the rental tax.
I respectfully dissent, however, from reversing the certification of the classes on the breach of contract claims. Two provisions of the contract documents unambiguously foreclosed GMAC and Yerby Chevrolet from charging the plaintiffs for the rental tax.
One provision states, "You agree to pay all taxes related to the lease on the vehicle that are levied on you, the vehicle, or us, except for taxes on our net income and the Alabama Rental Tax." (Emphasis added.) This provision categorizes the Alabama rental tax together with the lessor's own net income tax, a tax that no party contends was or could be passed along to a lessee under the terms of the contract documents. No other language in the contract serves to differentiate between the treatment of the Alabama rental tax and the lessor's own net income tax, which could not be charged to the lessees. While the doctrine of contra proferentum is by no means the primary rule of contract interpretation, it should serve to discourage such a lame attempt as in the case before us by a drafter of a document to claim and to exploit an ambiguity in that document.
The second provision of the contract documents that unambiguously foreclosed GMAC and Yerby from charging the plaintiffs for the rental tax is the statement in the "Leasing Worksheet": "Rental/Use Tax (Rate 0 %) + $ N.A.." No fair interpretation of this language allows the conclusion that a lessee could be charged for the rental tax.
No genuine ambiguity in the contract documents negates the commonality of the plaintiffs' contract claims. Therefore we should affirm the certification of the classes for the pursuit of the contract claims.
HARWOOD, Justice (concurring in the result in part and dissenting in part).
Although the main opinion notes that the plaintiff filed an action alleging breach of contract, suppression, misrepresentation, "quasi-contract and unjust contract enrichment," and theft by deception, Dubose acknowledges in his brief to this Court that the suppression and theft-by-deception claims were dismissed by the trial court. Accordingly, we need address only the claims of breach of contract, misrepresentation and quasi-contract/unjust enrichment. As to those claims, the sole issue before us, as posited by GMAC and Yerby Chevrolet in their brief, is "did the trial court abuse its discretion by certifying plaintiff classes under Rule 23(b)(3)?"
The feature of the "GMAC Lease Agreement" that is centrally at issue in this case is the section captioned "OFFICIAL FEES AND TAXES." That section reads in its entirety as follows (I have numbered the sentences using brackets to facilitate ease of further reference to them):
"[1] You agree to pay all fees and charges for titling, registering, licensing, testing, and inspecting the vehicle that any government authority requires during the term of this Lease. [2] You agree to pay all taxes related to the *76 Lease or the vehicle that are levied on you, the vehicle, or us, except for taxes on our net income and the Alabama Rental Tax. [3] We will include the taxes you must pay in the Payment Due at Lease Signing or in your Monthly Payment or we will bill you separately. [4] We may change your Monthly Payment for increases of decreases in taxes, including increases or decreases that may result from a change in the vehicle's location for tax purposes."
GMAC and Yerby Chevrolet contend, and the main opinion concludes, that this paragraph is ambiguous, reasoning that the fairly straightforward second sentence is rendered uncertain by the two sentences that follow that sentence. The main opinion states that "[t]hese sentences refer to the Alabama rental tax, thus creating an ambiguity." I assume that it is the third sentence of the paragraph that is deemed to create the ambiguity. I fail to discern any ambiguity, however, finding the second sentence and "the two sentences that follow that sentence," when read together to be clear and certain in their import. The second sentence advises that the lessee is agreeing to pay all taxes, whether originally levied on the lessee, the vehicle, or the lessor, "except for ... the Alabama Rental Tax." Accordingly, the lessee is advised that he or she is agreeing to pay all such taxes, except the Alabama rental tax. The next sentence advises that the lessor "will include the taxes you must pay" either in the "Payment Due at Lease Signing" section of the lease or in the "Monthly Payment" section of the lease, or, alternatively, will bill the lessee separately for the same. The lease agreement Dubose signed did indeed contain a "Payment Due at Lease Signing" section and a "Monthly Payment" section. The Payment Due at Lease Signing was shown to be $601.39 and the Monthly Payment was shown to be $554.89. The "Payment Due at Lease Signing" section provided the explanation, "[t]hese amounts make up the Payment Due at Lease Signing," followed by a column of 14 different categories, to the right of each of which a blank was provided for the entry of a dollar amount. The various blanks were filled in so as to show that the amount of $601.39 as Payment Due at Lease Signing was derived from adding together the $554.89 monthly payment, a $16.50 "title fee," and a $30.00 "clerical fee." Various other fees and certain taxes were listed in the column as potential components of the Payment Due at Lease Signing amount, including one designated "Rental/Use Tax." The blank opposite it, as well as those opposite the rest of the categories, was filled in with the initials "NA," designating "not applicable." The "Monthly Payment" section of the contract likewise provided the explanation that "[t]hese amounts make up the Monthly Payment:" followed by a column of designated potential charges and a blank opposite each charge into which any applicable amount could be entered. One of those potential components was, again, "Rental/Use Tax," but, again, the only entry in the blank opposite that listing was "NA." ("The Leasing Worksheet" referred to in Justice Johnstone's special writing, which contains a similar entry reflecting that no charge was to be made for "Rental/Use Tax," was, according to the record, merely an internal document used by Yerby Chevrolet in working up the information to be entered into the appropriate blanks of the formal lease agreement, and when the worksheet was shown to Dubose during his deposition, he stated that he had never seen it before. Nonetheless, essentially the same information is directly stated in the lease agreement itself, as noted above.) Accordingly, by the manner in which Yerby Chevrolet and GMAC "includ[ed] the taxes you must pay in the Payment Due at *77 Lease Signing or in your Monthly Payment," they explicitly excluded the Alabama rental tax. Also, they did not subsequently "bill [Dubose] separately" for that tax.
Another section of the lease agreement is titled "Total Estimated Fees and Taxes Payable During Lease." A total of $416.50 is stated, followed by the explanation "[t]hese amounts make up the total." Again there follows a column of categories, but only two of those categories are filled in with monetary amounts: "Title Fees," for which there is the entry of $16.50, and "License Fee," for which there is the entry of $400. For all other listed categories, including one characterized as "Rental/Use Taxes," the explanatory entry is "NA."
Reading all of these provisions together, I discern no ambiguity. Rather, Dubose was informed in a very straightforward fashion that he was agreeing to pay all possibly applicable taxes, "except for ... the Alabama Rental Tax" (along with taxes on Yerby Chevrolet's and GMAC's net income) and that the particular taxes he was going to have to pay, excluding the Alabama rental tax, would be included either in the "Payment Due at Lease Signing" or in the "Monthly Payment," or he would be billed separately for the same. The lease agreement followed through on that representation, providing a "breakdown" of the items that made up the "Payment Due at Lease Signing" and the "Monthly Payment," respectively, and in each instance Dubose was told that there was no inclusion of "Rental/Use Tax." Because I see no ambiguity in any of this, I necessarily disagree with the derivative conclusion stated in the main opinion that "[t]his ambiguity prevents Dubose from satisfying the `commonality' requirement of Rule 23(a)(2), Ala. R. Civ. P., and forecloses the conclusion that `common issues predominate' in these class actions."
However, in addition to asserting an absence of commonality, GMAC and Yerby Chevrolet also challenged the trial court's certification order on the basis that Dubose had not carried his burden under Rule 23(a)(3), Ala. R. Civ. P., of showing that "the claims ... of the [named plaintiff] are typical of the claims ... of the class," and his burden under Rule 23(a)(4) of showing that "the [named plaintiff] will fairly and adequately protect the interests of the class." In other words, in addition to clearing the "numerosity" hurdle of Rule 23(a)(1) and the "commonality" hurdle of 23(a)(2), Dubose was obliged also to clear the (a)(3) hurdle of "typicality" and the (a)(4) hurdle of "adequacy." In that regard, the following facts (asserted and argued by GMAC and Yerby Chevrolet in their brief, and which I find to be stated by Dubose in his deposition testimony, and which are not challenged in anyway by Dubose in his brief) are pertinent.
In his deposition, Dubose stated that he "thinks" the "finance guy" at Yerby Chevrolet "explained to me about the taxes," explaining in the process that "there would be rental tax, but he didn't tell me what percentage or anything at that time it would be." It was Dubose's impression that this individual "didn't understand the rental tax," because Dubose does not think that the individual "even told me a percentage or anything what the rental tax would be," but rather just told him that "there might be some, but he was not for sure." Subsequently, after Dubose had either seen on television or read in some article an exposé of abuses sometimes attending lease transactions, he began to believe that there had been an "overcharging... [o]f the rental tax. I think they charged me too much which was about 0.6 percent, something like that." He came to that conclusion "[j]ust by the Alabama law says that the rental tax will be one thing and I thinkI don't know I come to the *78 conclusion of figuring it, but I was figuring it one day and it was over that." Whatever it was that he read or saw on television, "I just figured mine was different. I don't remember how I come to it." Although he experienced some difficulty during his deposition in trying to explain what he meant, he stated that during his later reconsideration of the transaction "the total amount that I had paid did not add up. The percentage was more." He started looking into the matter, finally consulting an attorney, because, although the agreement "said I did not pay taxes, rental taxes, I knew Alabama showed that you did pay rental taxes." So he was "wondering where the rental tax went to." He came to the conclusion that it was included within one of the numbers on the lease agreement, "because you have to pay the taxes and I don't figure they paid them." When asked if he thought that the lease agreement should have specified that he was being charged a rental tax, he answered that it "should have showed how much, I think." He thinks that the rental tax "is a lower percentage rate than what they charged me." When he learned about the rental tax, "I knew I had paid it because I knew they wouldn'tyou know, it's a tax. You have to pay a tax, but I just didn't know where the tax was or how much I had paid." When asked later, "Are you saying that it is OK that the tax is there, you just think you paid too much?" Dubose answered "Yes." With respect to the figures "the finance guy" came up with in calculating the price he ultimately quoted, Dubose recalled that "[h]e came up with the price, and then he added something to it ... I think I remember it being a tax but as farI can't say that." Asked if it was his testimony that he thought some of the numbers "related to a tax," Dubose answered, "yes, I think so."
Asked "if the folks that you dealt with at Yerby in April of 1995 had said, Mr. Dubose, the Alabama rental tax is one of the things that's factored into your monthly payment, would you have gone ahead with the lease?," Dubose answered "yes."
This testimony of Dubose raises serious questions concerning the nature of his understanding at the time he executed the lease agreement about the possible inclusion in his transaction of a charge for the Alabama rental tax; whether he relied on that understanding, and whether his reliance was reasonable under all of the circumstances. Those considerations are certainly relevant to his suitability as a class representative with respect to the claim of misrepresentation. He must establish that his claim of misrepresentation is typical of the class he seeks to represent, and that he would be an adequate representative. There are clearly considerations that pertain to his particular attitude and "reliance" that would call into question his typicality and adequacy as to the misrepresentation claim, e.g., he would have gone forward with the lease of the vehicle even if he had known that the Alabama rental tax was being included in his monthly payment. "The alleged misrepresentation, therefore, did not materially contribute to his damage and was not `of such character that the purchaser would not have consummated the contract ... had he known the falsity of the statement.'"Earnest v. Pritchett-Moore, Inc., 401 So.2d 752, 758 (Ala.1981) (quoting Southern Loan & Trust Co. v. Gissendaner, 4 Ala.App. 523, 529, 58 So. 737, 739 (1912)). This, in addition to the general "reliance" variabilities the members of the class would exhibit, defeating the Rule 23(b)(3) requirement of commonality predominance, renders certification of the two classes improper as to the claim of misrepresentation.
Likewise, the individualized inquiries that would be required in connection with litigation of the "quasi-contract and unjust enrichment" claims overwhelm the finding of commonality as to them. A plaintiff *79 asserting unjust enrichment must prove, among other things, that the "donor of the benefit ... acted under a mistake of fact or in misreliance on a right or duty," and in the absence of such a mistake or misreliance, "the recipient may have been enriched, but he is not deemed to have been unjustly enriched." Jordan v. Mitchell, 705 So.2d 453, 458 (Ala.Civ.App.1997). Each class member's knowledge, understanding, intent, and motive would have to be examined to determine if there had been an unjust enrichment as to them. There would be no occasion to resort to the doctrine of quasi-contract in a case such as this, where the parties rely on an express contract, unless individualized claims of variations in the contract language are asserted, based on accompanying oral representations and explanations. Accordingly, class certification as to those two theories is likewise inappropriate.
As to the contract claim, however, because I find no ambiguity in the contract language, and because GMAC and Yerby Chevrolet argue no other impediment pertinent to certification of that claim, I dissent from the reversal of the order certifying the two classes as to that claim.
NOTES
[1] See Atlanta Cas. Co. v. Russell, 798 So.2d 664 (Ala.2001), in which this Court stated: "The enactment of § 6-5-642, Ala.Code 1975, a statute that became effective before the certification was made in this case, provides parties with the right of appeal from an order granting or denying class certification."
[2] The Alabama rental tax, imposed pursuant to §§ 40-12-220 to -227, Ala.Code 1975, is a privilege or license tax levied on a person or corporation in the business of renting tangible personal property. The amount of the tax for the lease of automobiles is 1.5 percent of gross proceeds derived by the lessor from the lease of the automobile.
[3] The certification order was filed in the circuit clerk's office on February 7, 2001.